IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TIMO ILVES,

                Petitioner,              OPINION AND ORDER

v.

                                          21-cv-387-wmc

JEANNA RHAE ILVES,

                Respondent.

---

Before the court is respondent Jeanna Rhae Ilves' motion for a psychological examination of the plaintiff under Federal Rule of Civil Procedure 35. (Dkt. #12.) This motion is part of a broader dispute regarding the petition of Timo Ilves for the return of Ilves' only child under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention").[1] However, the narrow decision before the court today is whether Jeanna has met the burden to order a psychological examination of Timo under Rule 35. Because the court finds that she has not done so, her motion will be denied for the reasons explained below.

BACKGROUND

Timo and Jeanna are still a married couple who, although separated since roughly February 2018, were raising their child, N.W.I., in Tartu, Estonia, until February 2021. (Compl. (dkt. #1) at ¶¶ 23, 25.) At that time, Jeanna left Estonia with N.W.I., coming to the United States, initially living in Arizona before settling in Wisconsin. (J. Ilves Aff. (dkt. #13) ¶ 10.) Jeanna alleges that Timo was abusive to her, both while they lived

---

[1] For ease of reference, the court will generally refer to the parties by their first names, Timo and Jeanna, and to their child by his initials, "N.W.I."

together and following their separation, and she was granted an *ex parte* order of protection against Timo while in Arizona. (*Id*.) Timo subsequently filed a complaint with this court petitioning for the repatriation of N.W.I. back to Estonia to decide custody under the Hague Convention and its enabling statutes. (Compl. (dkt. #1).) Jeanna has now filed a motion for this court to order a psychological "examination to determine whether Petitioner is suffering from any mental health disease or defect." (Resp.'s Mot. (dkt. #12).)

In support of the psychological exam, Jeanna attests to specific instances of abuse she suffered at the hands of Timo, including some in N.W.I.'s presence. (J. Ilves Aff. (dkt. #13).) This included Timo striking Jeanna, following her without her knowledge, and threatening to punch her. (*Id*. ¶¶ 1-5.) Jeanna has also alleged that Timo was abusive to N.W.I, stating that Timo would rip N.W.I. from her arms, grab N.W.I., and swing him around dangerously in anger. (*Id*. ¶ 8.) Timo has disputed all these allegations with his own affidavit, as well as with additional letters from pastors, friends, and Estonian family services agencies, who have had contact with the couple. (T. Ilves Aff. (dkt. #15).) In particular, those letters categorically deny any knowledge of abuse by Timo against Jeanna or N.W.I., despite Jeanna's representations that at least some of them or the organizations they represent were made aware of his abuse.

OPINION

Under Rule 35, a district court "where the action is pending may order a party whose mental or physical condition, including blood group, is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. Proc. 35. No further instruction, though, is given in either the rule or its advisory

committee notes. In *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964), which involved a bus crashing into a tractor, the United States Supreme Court fleshed out the requirements for Rule 35. The case addressed in particular the "in controversy" and "good cause" requirements, finding both phrases establish material limits on a court's power to order a physical or mental examination under Rule 35. *Id*. at 118. Even so, *Schlagenhauf* does not draw a strict line between the analysis necessary to find "good cause" and "in controversy". Instead, the Supreme Court explained both "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id*. Subsequent courts and commentators have further suggested this analysis is necessarily "intensely fact-specific, and no general rules can be set out." 8B Charles Alan Wright *et al., Fed. Practice & Procedure* § 2234.1, 263-64 (3d ed. 2010). As such, the court looks to each requirement in light of the facts at hand.

I. "In Controversy" Requirement

Unless the non-movant placed their own mental state into controversy, the movant bears the burden to show that the subject's mental state is truly in controversy. *Schlagenhauf*, 379 U.S. at 119. While Jeanna asserts that *Timo* put his mental state in controversy by "asking the court to act 'for the well-being of the child'," this argument finds no support in case law. (Pet.'s Opp'n. (dkt. #16).) To the contrary, courts have found that even a non-movant whose case relies on some articulation of mental distress still may not have put their mental health in controversy. *E.g., Nolan v. Int'l Bhd. of Teamsters Health & Welfare & Pension Funds, Loc. 705*, 199 F.R.D. 272, 276 (N.D. Ill. 2001)

(holding plaintiff's claim of damages based on emotional pain for mere "humiliation and embarrassment" did not put her mental state "in controversy"). Given this threshold, a brief reference to the well-being of N.W.I is simply not enough for Timo to have put his own mental health at issue.

The question then becomes whether *Jeanna* has met her burden to show that Timo's mental state is, indeed, in controversy. As a preliminary matter, the exhibits advanced by both parties hold little or no evidentiary weight at this point.[2] Moreover, while the two parties' respective affidavits are sworn, they mainly involve a recitation of each party's view of the disputed, material. While petitioner goes beyond this by providing letters purporting to be from third-parties, as respondent notes, they have not been properly sworn or authenticated, making them nothing more than third-party allegations at this juncture.[3]

Finally, even crediting Jeanna's affidavit, she has yet to offer sufficient facts to put Timo's mental status in controversy, as opposed to calling into question his general fitness as a husband and father.[4]

In *Schlagenhauf*, the Supreme Court ultimately found that the movant failed to show

---

[2] Given that the exhibits presented in petitioner's opposition to respondent's motion were not used as the basis of this decision, the court need not address Jeanna's motion to strike further, other than to note that while not admissible under the rules of evidence for the truth of the matters asserted, neither is it necessary to "strike" them from the record in this case.

[3] Since the ultimate question is whether N.W.I. would be in grave danger if repatriated, understanding how the child feels about his parents could help with that decision. At the heart of an Article 13(b) defense of the Hague Convention is the child's safety and security. For that reason, the court might be open to appointing an independent examination of N.W.I. by a qualified child psychologist. *Khan v. Fatima*, 680 F.3d 781, 788 (7th Cir. 2012).

[4] This does not preclude Jeanna from offering further evidence that could possibly meet her burden -- for example, evidence of a history of mental illness or corroborated allegations of behaviors that bring Timo's mental health into question.

anything beyond conclusory statements regarding the non-movant's health. Accordingly, the Court found a few mentions of physical health in cross-claims were insufficient to bring physical health into controversy.

> The only allegations in the pleadings relating to this subject were the general conclusory statement in Contract Carriers' answer to the cross-claim that 'Schlagenhauf was not mentally or physically capable of operating' the bus at the time of the accident and the limited allegation . . . that, at the time of the accident, 'the eyes and vision of Schlagenhauf [were] impaired and deficient.'

379 U.S. at 120. In *Schlagenhauf*, as here, no evidence was offered to back up these general assertions, and even they were only briefly mentioned in advance of the motion for physical examination. Also, as here, the Court found persuasive that the bare allegations made were not sufficiently connected to the exams requested: "[N]othing in the pleadings or affidavit would afford a basis for a belief that Schlagenhauf was suffering from a mental or neurological illness warranting wide-ranging psychiatric or neurological examinations." *Id*.

Specifically, in this case, Jeanna has requested "an examination to determine whether Petitioner is suffering from any mental health disease or defect" on the basis of abuse and anger allegations. (Resp.'s Mot. (dkt. #12) 1.) This broad request is supported only by vague references to abuse and anger in the movant's own affidavit. Indeed, except for a general allegation of abuse in an *ex parte* Arizona proceeding, the movant appears to even have made such assertions before her motion.[5] These circumstances seem similarly conclusory to those in *Schlagenhauf*, suggesting this court should deny Jeanna's motion.

---

[5] In fairness, the movant does claim to have made statements to specific friends in Estonia, but these assertions have no more evidentiary value than the unsworn written statements offered to the contrary by Estonians purporting to be friends and colleagues of both Ilves.

5

Still, in *Khan v. Fatima*, 680 F.3d 781 (7th Cir. 2012), the Seventh Circuit admonished a district court for failing to order psychological exams in a case of alleged abuse under the Hague Convention, which at first glance appears to support Jeanna's position. In *Khan*, Judge Posner, speaking for a three-judge panel, generally found that the district court judge had failed to make important inquiries in the case, observing that the trial was only one day, no psychological exam was ordered for the child, and much of the testimony was not properly considered. *Id*. The court also observed that "repeated physical and psychological abuse of a child's mother by the child's father, in the presence of the child (especially a very young child, as in this case), is likely to create a risk of psychological harm to the child." *Id*. at 787. Although the *Khan* opinion certainly favors the need for robust finding of facts in similar Hague Convention cases, the case is readily distinguishable from the one at hand in several important ways. First, the statements about psychological examinations were regarding the child, not the father; second, while the court did not engage in a Rule 35 analysis, there were strong indications in the record that a psychological exam *would* be helpful. *Id*. at 787. For example, reports from child visitation supervisors noted that she talked about her fear of her father, and she mentioned receiving bruises from him. *Id*. Additionally, the wife had filed a police report of domestic violence during the family's time in India. *Id*. at 787. Indeed, the police in India had formally charged the father in connection with those allegations. *Id*. at 784. Thus, *Khan* provides a much stronger factual basis for bringing mental health into controversy than unsubstantiated allegations by the movant alone, and even then only to the extent it justified in robust fact-finding, including a suggested psychological examination of the child. For all these reasons,

6

the court finds that Jeanna has failed to show that Timo's mental state is truly in controversy, at least at this point in their dispute under the Hague Convention.

**II. Good Cause Requirement**

Even if Jeanna had met her burden with respect to putting Timo's mental state in controversy, she has still failed to show good cause to order his psychological examination. In order to do so, the movant must go beyond showing that an examination would be relevant; instead, she must provide evidence that the test would "inform the court and the parties of the true facts as to the . . . condition of the party." 8B Charles Alan Wright *et al.*, *Fed. Practice & Procedure* § 2231, 243 n.6 (3d ed. 2010). Indeed, because Rule 35 is the only federal rule of civil procedure that specifies that necessitates a showing of good cause, this heightened requirement "would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b)." *Schlagenhauf,* 379 U.S. at 118.

In this case, Jeanna has alleged no specific history of mental illness, nor even explained why a psychological examination would be likely to show that the respondent's purported physical or mental abuse. If anything, research suggests no such link.

> Nothing in the Diagnostic and Statistical Manual of Mental Disorders, fifth edition (DSM 5) states that a mental illness solely causes a partner to be abusive in a relationship; however, there are a select few diagnoses that can increase the risk of abusive patterns to show up in a relationship and in other areas of life. Mental illness tends to impact all areas of a person's life, such as work, interactions with friends, family engagement and personal relationships. In contrast, abuse primarily impacts personal relationships and typically not the other areas of life.

Abuse and Mental Illness: Is There a Connection?

https://www.thehotline.org/resources/abuse-and-mental-illness-is-there-a-connection/ (last visited August 23, 2021); *see also* How to Handle Abusive Relationships and Mental Illness (April 27, 2020), https://www.rtor.org/2020/04/27/how-to-handle-abusive-relationships-and-mental-illness/ (last visited August 23, 2021) ("One of the most harmful misconceptions about abusive relationships is that they are the product of mental illness. Research demonstrates that those who commit violence in their relationships are no more likely to be mentally ill than the general population, and it's understood that it's abusive people's value systems that are unwell rather than their psychology.")[6] In *Schlagenhauf*, the Supreme Court found the connection between the movant's claims of physical impairment and the battery of tests requested to be too tenuous. *Schlagenhauf*, 379 U.S. at 120. Based on the evidence offered to date, this court finds the same.

Even if a psychological exam of the respondent *might* be relevant to the ultimate issue before the court under the Hauge Convention -- grave danger to the child -- if repatriated, Jeanna does not meet the higher burden of good cause. In weighing the claims made, the court only has a contradicted affidavit by the movant herself in order to support her assertions that the exam is necessary. While this is not the time for a weighing of the

---

[6] Sadly, though perhaps not surprisingly, the reverse is more likely to be true, obviously not as a cause but as a product of or vulnerability to abuse. Sarah Bosely, *Domestic abuse victims more likely to suffer mental illness – study*, June 7, 2019, (last visited August 23, 2021) https://www.theguardian.com/society/2019/jun/07/domestic-abuse-victims-more-likely-to-suffer-mental-illness-study (British Journal of Psychiatry suggests that "Women who have been abused by a partner are three times more likely to suffer depression, anxiety or severe conditions such as schizophrenia or bipolar disorder than other women."); *see also* How to Handle Abusive Relationships and Mental Illness, April 27, 2020, (last visited August 23, 2021) https://www.rtor.org/2020/04/27/how-to-handle-abusive-relationships-and-mental-illness/ ("Domestic abuse victims are more likely to suffer from poor mental health, including depression, anxiety, and even severe conditions such as bipolar disorder and schizophrenia.").

ultimate evidence, the fact that Jeanna's already thin evidence is in question compounds the issue. *Khan* again provides some support for erring on the side of more fact-finding, but the more extreme facts in *Khan* make it distinguishable. Unlike in *Khan,* there is no evidence that N.W.I. is afraid of his father. Jeanna herself states in her affidavit that, "[N.W.I.] also asked me, 'when can Daddy move back in?'" (J. Ilves Aff. (dkt. #13) ¶ 4.) Due to the factual differences between *Khan* and the current case, the court concludes that the respondent has not met her burden of demonstrating good cause.

Given the extent to which the parties have so far relied on unsworn witness statements, or purport to relate statements by third-parties, both sides should arrange to have witnesses available for the trial date. Moreover, in light of the obvious travel issues, the court would be open to some witnesses appearing by teleconference.

ORDER

IT IS ORDERED that:

1) Respondent Jeanna Rhae Ilves' motion to allow psychological exams (dkt. #12) is DENIED.

2) Respondent's motion to strike (dkt. #16) is DENIED AS MOOT.

Entered this 25th day of August, 2021.

BY THE COURT:

\_s/ William M. Conley_____
WILLIAM M. CONLEY
DISTRICT JUDGE